Monica A. Limón-Wynn (#019174)
LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282-8008
Telephone: (480) 946-0680
Facsimile: (888) 893-9698
mlimon-wynn@mlwlawaz.com
Attorneys for Plaintiffs Robert W. Birks,
Thomas Colburn, and Aaron Post

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert W. Birks, Thomas Colburn, and Aaron Post,<br><br>Plaintiffs,<br><br>v.<br><br>GinJoint, LLC, a Delaware limited liability company; Joe Nolan and Jane Doe Nolan, husband and wife and citizens of Pennsylvania; Eric Israel and Jane Doe Israel, husband and wife and citizens of Texas; Al Carter and Jane Doe Carter, husband and wife and citizens of Delaware; and Wayne Wilson and Jane Doe Wilson, husband and wife and citizens of Pennsylvania,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

This action seeks recovery for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* Arizona's wage statute, A.R.S. §§ 23-350, *et seq.*, and the Employment Agreement that each Plaintiff executed with Defendant GinJoint, LLC. Plaintiff Robert Birks and Plaintiff Aaron Post have not been paid <u>any</u> wages for sixteen (16) weeks, and Plaintiff Thomas Colburn has not been paid <u>any</u> wages for a period of four (4) weeks, which caused and forced Mr. Colburn to resign.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Robert W. Birks ("Birks") is a citizen of Arizona. Birks is a current employee of GinJoint.

2. Plaintiff Thomas Colburn ("Colburn") is a citizen of Arizona. Colburn is a former employee of GinJoint.

3. Plaintiff Aaron Post ("Post") is a citizen of Arizona. Post is a current employee of GinJoint.

4. Defendant GinJoint, LLC ("GinJoint") is a Delaware limited liability with a principal place of business at 26 West Lone Cactus Drive, Suite 100, Phoenix, Maricopa County, Arizona 85027.

5. Defendants Joe Nolan ("Nolan") and Jane Doe Nolan, are husband and wife, who are citizens of Pennsylvania. Nolan is currently the Chief Executive Officer of GinJoint, and a member of the GinJoint Board of Managers.

6. Defendants Eric Israel ("Israel") and Jane Doe Israel, are husband and wife, who are citizens of Texas. Israel is a member of the GinJoint Board of Managers.

7. Defendants Al Carter ("Carter") and Jane Doe Carter, are husband and wife, who are citizens of Delaware. Carter is a member of the GinJoint Board of Managers.

8. Defendants Wayne Wilson ("Wilson") and Jane Doe Wilson, are husband and wife, who are citizens of Pennsylvania. Wilson was made a GinJoint Board of Managers by Nolan in violation of the GinJoint Operating Agreement.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought pursuant to 29 U.S.C. § 216(b). In addition, this court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

10. The Court has personal jurisdiction over Defendant GinJoint because it conducts business in this District and its principal place of business is located in Maricopa County, Arizona.

11. The Court has personal jurisdiction over Defendant Joe Nolan because he is the Chief Executive Officer of GinJoint, a business having a principal place of business in Maricopa County, and because he, by virtue of his own acts and omissions, directly caused actions to occur within the State of Arizona that give rise to the claims asserted in this Complaint and that caused damage to residents of Arizona.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b).

## **GENERAL ALLEGATIONS**

13. As defined under 29 U.S.C. § 203, GinJoint is an employer that is engaged in commerce in the State of Arizona and other states, and in the production of goods for commerce.

14. Nolan is the Chief Executive Officer of GinJoint and a member of its Board of Managers/Director who controls, has responsibility for, and is the final decision maker relating to the employment relationship with Birks, Colburn and Post, including the payment of wages.

15. Nolan is an employer as defined in 29 U.S.C. § 203 because he is a "person acting directly or indirectly in the interest of an employer" in relation to the employment of Birks, Colburn and Post, and due to his exertion of economic and operational control over that employment relationship, including in light of the circumstances of the whole activity and economic reality relative to the employment relationship.

16. By virtue of his position, authority, responsibility, control and decisions, Nolan is an employer with regard to Birks, Colburn and Post within the meaning of 29 U.S.C. § 203.

17. By virtue of his position, authority, responsibility, control, decisions, knowledge, acquiescence, agreement, action, inaction and vote, each of Israel, Carter and

Wilson is an employer with regard to Birks, Colburn and Post as defined in 29 U.S.C. § 203, and because each is a "person acting directly or indirectly in the interest of an employer" in relation to the employment of Birks, Colburn and Post, at all times relevant to the events giving rise to this action, including in light of the circumstances of the whole activity and economic reality relative to the employment relationship.

18. Birks and Post are current employees of GinJoint as the term employee is defined under 29 U.S.C. § 203(e).

19. Colburn is a former employee of GinJoint as the term employees is defined under 29 U.S.C. § 203(e), but was an employee at all relevant times.

20. GinJoint's customary pay schedule for wages to its employees is payment twice a month: on the last Friday on or before the 15th day of the month, and on the last day of the month.

21. As of the time of this filing, Birks had not been paid any wages for sixteen (16) weeks even though he is and has been employed a full-time employee working forty (40) hours per week.

22. As of the time of this filing, Post had not been paid any wages for sixteen (16) weeks even though he is and has been employed a full-time employee working forty (40) hours per week.

23. As of the time of this filing, Colburn had not been paid any wages for four (4) weeks even though he was employed during that time as a full-time employee working forty (40) hours per week.

24. In a letter dated August 3, 2015 that was submitted to Nolan on behalf of himself and as Chief Executive Officer of GinJoint, and to each of Israel, Carter and Wilson, Plaintiffs Birks, Colburn and Post made demand for immediate payment of all unpaid wages then due and owing, which included the pay periods of July 15, 2015 and July 30, 2015, as to each of Birks, Colburn, and Post.

25. In response, and through counsel, GinJoint, Nolan, Israel, Carter and Wilson did not agree to immediately pay the wages and would not agree, promise or commit whether or when any wages would be paid to any of the Plaintiffs.

**THE WAGE VIOLATIONS REGARDING ROBERT BIRKS**

26. Since July 8, 2014, Birks has been employed by GinJoint as a full-time employee.

27. Birks was not paid the wages due for the pay period of January 30, 2015 until February 6, 2015.

28. Birks was not paid the wages due for the pay period of June 30, 2015 until July 10, 2015.

29. As of the date of this filing, Birks was not and has not been paid any amount of the wages due for the pay periods of July 15, 2015, July 30, 2015, September 15, 2015, September 30, 2015, October 15, 2015, October 30, 2015, November 13, 2015 and November 30, 2015.

**THE WAGE VIOLATIONS REGARDING THOMAS COLBURN**

30. Beginning on July 8, 2014, GinJoint employed Colburn as a full-time employee.

31. Colburn was not paid the wages due for the pay period of January 30, 2015 until February 6, 2015.

32. Colburn was not paid the wages due for the pay period of June 30, 2015 until July 10, 2015.

33. Colburn was not paid on July 15, 2015 for the wages due for that pay period.

34. Colburn was not paid the wages due for the pay period of July 30, 2015.

35. Colburn was not paid the wages due for the pay period of August 15, 2015.

36. On August 20, 2015, Colburn was paid the wages that were due for the pay period of July 15, 2015.

1  37. On Sunday, August 17, 2015, due to the GinJoint's failure to pay wages owed to Colburn, Colburn submitted his resignation to GinJoint.

38. GinJoint's actions and inactions amount to a constructive discharge of Colburn.

39. On Monday, August 18, 2015, Nolan sent email correspondence to Colburn promising that if Colburn elected to resign immediately, Colburn would "promptly be paid [his] accrued salary."

40. As of the date of this filing, Colburn was not and has not been paid the wages due for the pay periods of July 30, 2015 and August 15, 2015.

**THE WAGE VIOLATIONS REGARDING AARON POST**

41. Since July 8, 2014, Post has been employment by GinJoint as a full-time employee.

42. Post was not paid the wages due for the pay period of January 30, 2015 until February 6, 2015.

43. Post was not paid the wages due for the pay period of June 30, 2015 until July 10, 2015.

44. As of the date of this filing, Post was not and has not been paid any amount of the wages due for the pay periods of July 15, 2015, July 30, 2015, September 15, 2015, September 30, 2015, October 15, 2015, October 30, 2015, November 13, 2015 and November 30, 2015.

**COUNT I**
**(Violation of the FLSA - 29 U.S.C. § 201, *et seq.*)**

45. Plaintiffs incorporate the preceding allegations of this Complaint as if fully set forth herein.

46. Birks and Post have worked full-time since July 2015 and have not received any pay for eight pay periods encompassing a span of sixteen (16) weeks for which no wages were paid.

47. Colburn worked full-time for four weeks for which no wages were paid.

48. Birks, Post and Colburn have been employed for work weeks longer than 40 hours per week for which no compensation was received

49. The failure of Defendants to pay any wages each to Birks and Post for sixteen (16) weeks violates 29 U.S.C. § 206.

50. The failure of Defendants to pay any wages to Colburn for four (4) weeks violates 29 U.S.C. § 206.

51. Defendants are liable for the harm suffered by Birks, Colburn, and Post due to Defendants' repeated and willful violations of the FLSA, for which Defendants are jointly and severally liable, including for payment of the lost wages, liquidated damages, penalties, sanctions, attorneys' fees, costs, fines and other compensation as permitted under 29 U.S.C. § 216.

## COUNT II
**(Violation of Arizona's Wage Statute – A.R.S. §§ 23-350, *et seq.*)**

52. Plaintiffs incorporate the preceding allegations of this Complaint as if fully set forth herein.

53. Defendant GinJoint failed and refused to pay the agreed-upon wages owed to Birks, Colburn and Post.

54. Defendant Nolan, for the purpose of benefiting himself and other wrongful purposes, caused GinJoint to fail to pay the wages owed to each of Birks, Colburn, and Post.

55. Defendants GinJoint and Nolan are liable under A.R.S. §§ 23-350 *et seq.*, for the failure to pay the wages owed to each of Birks, Colburn, including for treble damages and other sanctions, including attorneys' fees.

56. Defendants have willfully and for improper purpose failed to pay the wages owed to Birks, Colburn and Post for which Defendants are jointly and severally liable.

## COUNT III
### (Breach of Employment Agreements)

57. Plaintiffs incorporate the preceding allegations of this Complaint as if fully set forth herein.

58. On or about July 8, 2014, Birks entered into an Employment Agreement with GinJoint under which GinJoint agreed to pay him a base salary of $100,000 per year (the "Birks Employment Agreement").

59. Under the Birks Employment Agreement, GinJoint was obligated to pay Birks his base salary in equal installments in accordance with GinJoint's customary pay schedule, subject to applicable withholdings.

60. On or about July 8, 2014, Colburn entered into an Employment Agreement with GinJoint under which GinJoint agreed to pay him a base salary of $100,000 per year (the "Colburn Employment Agreement").

61. Under the Colburn Employment Agreement, GinJoint was obligated to pay Colburn his base salary in equal installments in accordance with GinJoint's customary pay schedule, subject to applicable withholdings.

62. On or about July 8, 2014, Post entered into an Employment Agreement with GinJoint under which GinJoint agreed to pay him a base salary of $100,000 per year (the "Post Employment Agreement").

63. Under the Post Employment Agreement, GinJoint was obligated to pay Post his base salary in equal installments in accordance with GinJoint's customary pay schedule, subject to applicable withholdings.

64. The employment relationship is a contractual relationship recognized under the common law that exists between an employer and employee.

65. Between July 8, 2014 and August 17, 2014, a common law employment relationship existed between Colburn and GinJoint.

66. A common law employment contractual relationship exists between Birks and GinJoint since July 8, 2014.

67. A common law employment contractual relationship exists between Post and GinJoint since July 8, 2014.

68. The foregoing described acts of GinJoint, including the failure to pay wages owed to Birks, Colburn, and Post, the failure to pay wages when due in accordance with GinJoint's customary pay schedule, and the failure to uphold its promises, duties and obligations to Birks, Colburn, and Post, violate each of the Birks Employment Agreement, the Colburn Employment Agreement, and the Post Employment Agreement.

69. The foregoing described acts of GinJoint, including the failure to pay wages owed to Birks, Colburn, and Post, the failure to pay wages when due in accordance with GinJoint's customary pay schedule, and the failure to uphold its promises, duties and obligations to Birks, Colburn, and Post, violate each of the common law employment contractual relationships that GinJoint had with Colburn and currently has with Birks and Post.

70. GinJoint failed to cure its repeated and material breaches of each of the Birks Employment Agreement, the Colburn Employment Agreement, and the Post Employment Agreement.

71. GinJoint failed to cure its repeated and material breaches of each of the common law employment contractual relationship GinJoint had with Colburn, and currently has with Birks and Post.

72. As a result of GinJoint's failure to fulfill the promises, duties, and obligations owed to Birks pursuant to the Birks Employment Agreement and the Birks common law employment contractual relationship, GinJoint has caused Birks to suffer harm for with GinJoint is liable.

73. As of the date of this filing, the total amount of unpaid wages due to Birks pursuant to his contractual relationship with GinJoint is the gross amount of $33,333.36, less applicable withholdings.

74. As a result of GinJoint's failure to fulfill the promises, duties, and obligations owed to Colburn pursuant to the Colburn Employment Agreement and the Colburn common law employment contractual relationship, GinJoint has caused Colburn to suffer harm for with GinJoint is liable.

75. As of the date of this filing, the total amount of unpaid wages due to Colburn pursuant to his contractual relationship with GinJoint is the gross amount of $8,333.33, less applicable withholdings.

76. As a result of GinJoint's failure to fulfill the promises, duties, and obligations owed to Post pursuant to the Post Employment Agreement and the Post common law employment contractual relationship, GinJoint has caused Post to suffer harm for with GinJoint is liable.

77. As of the date of this filing, the total amount of unpaid wages due to Post pursuant to his contractual relationship with GinJoint is the gross amount of $33,333.36, less applicable withholdings.

### COUNT IV
**(Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendant GinJoint, LLC)**

78. Plaintiffs incorporate the preceding allegations of this Complaint as if fully set forth herein.

79. Each of the Birks Employment Agreement, the Colburn Employment Agreement, and the Post Employment Agreement contain an implied-in-law covenant of good faith and fair dealing that imposed upon GinJoint a duty to act in good faith and to deal fairly at all times with Birks, Colburn and Post, and to refrain from undertaking action designed to deprive Birks, Colburn and Post of the benefits of his respective bargain with GinJoint.

80. The employment relationship is a contractual relationship recognized under the common law that exists between an employer and employee.

81.     Between July 8, 2014 and August 17, 2014, a common law employment relationship existed between Colburn and GinJoint.

82.     A common law employment contractual relationship exists between Birks and GinJoint since July 8, 2014.

83.     A common law employment contractual relationship exists between Post and GinJoint since July 8, 2014.

84.     The conduct of GinJoint described herein, including ongoing and continued deprivation and withholding of wages, the delay of payment of wages, the partial payment of wages, and the attempts to coerce and badger each of Birks, Colburn and Post to forego the amount of wages GinJoint agreed to pay him, violate the implied-in-law covenant of good faith and fair dealing that exists in the Birks Employment Agreement, the Colburn Employment Agreement, and the Post Employment Agreement.

85.     The conduct of GinJoint described herein, including ongoing and continued deprivation and withholding of wages, the delay of payment of wages, the partial payment of wages, and the attempts to coerce and badger each of Birks, Colburn and Post to forego the amount of wages GinJoint agreed to pay him, violate the implied-in-law covenant of good faith and fair dealing that exists in the common law employment contractual relationship that exists between Birks and GinJoint, that exists between Post and GinJoint, and that existed between Colburn and GinJoint until Colburn's resignation on August 17, 2014.

86.     As of result of GinJoint's violation of the implied-in-law covenant of good faith and fair dealing, each of Birks, Colburn and Post have suffered harm for which GinJoint is liable.

## COUNT V
**(Intentional Infliction of Emotional Distress)**

87.     Plaintiffs incorporate the preceding allegations of this Complaint as if fully set forth herein.

88. By intentionally refusing and depriving Post of any wages for months and using the deprivation of wages in an effort to coerce and extort Post to agree to his unreasonable and malicious demands, Nolan knew that Post would be susceptible to the emotional distress caused by his conduct.

89. Nolan abused his position to exert undue and extreme pressure and to obtain an extortionate advantage over Post.

90. Nolan's conduct is and continues to be extreme and outrageous.

91. Nolan's conduct is conduct that an average member of the community would regard as atrocious and beyond all possible bounds of decency.

92. Nolan either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct.

93. As a result of Nolan's conduct, Post has suffered and sustained severe emotional distress and injury in an amount to be proven at trial.

94. Post is entitled to an award of punitive damages in an amount sufficient to deter such conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert W. Birks, Thomas Colburn and Aaron Post pray for judgment in their favor and judgment in their favor and against Defendant GinJoint, LLC, Defendants Joe Nolan and Jane Doe Nolan, Defendants Eric Israel and Jane Doe Israel, Defendants Al Carter and Jane Doe Carter, and Defendants Wayne Wilson and Jane Doe Wilson as follows:

A. For an award of compensatory damages for all unpaid wages owed, plus treble damages including under A.R.S. § 23-355, pre-judgment interest at the highest legal rate on all amounts, and post-judgment interest at the highest rate on all amounts until paid in full;

B. For an award of damages in favor of Post for the pain, discomfort, suffering, anxiety already experienced, and reasonably probable to be experienced in the future as a

1  result of Defendants' fault

2      C.    For an award of damages in favor of Post for reasonable expenses of necessary medical care, treatment and services rendered and reasonably probable to be incurred in the future; the harm to Post's reputation, and the physical injury to Post;

    D.    For an award of the reasonable attorneys' fees, expenses and costs pursuant to 29 U.S.C. § 216(b);

    E.    For an award of punitive damages in an amount to be determined at trial;

    F.    For such other and further relief in favor of Plaintiffs as this Court may deem appropriate, proper and just.

DATED this 4th day of December, 2015.

                          LIMÓN-WYNN LAW, PLLC

                          By:   /s/ Monica A. Limón-Wynn
                              Monica A. Limón-Wynn
                              Tempe City Center
                              1400 East Southern Avenue, Suite 915
                              Tempe, Arizona  85282-8008
                              Attorneys for Plaintiffs